IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DERIC LAVELLE MAY,               :
        Plaintiff,               :
                                 :
                                 :
vs.                              :        CIVIL ACTION 14-155-WS-M
                                 :
GARY HETZEL, *et al.*,           :
        Defendants.              :
                                 :


REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 1983 brought by an

Alabama prison inmate, Deric LaVelle May, proceeding *pro se*

and *in forma pauperis,* which has been referred for report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and

Local Rule 72.2(c)(4).  It is now before the undersigned on

the Motion for Summary Judgment of Defendants, Gary Hetzel,

Penny Emmons, James Smith, and Ashley Wall, and Plaintiff's

Response thereto.[1]  (Docs. 18, 24, 25, 26).  After

_____

[1] This Motion for Summary Judgment was to be taken
under submission on September 25, 2014, after Plaintiff was
given the full opportunity to respond to the Defendants'
Motion for Summary Judgment, which he did.  (*See* Docs. 25,
26 and Endorsed Order docket entry 31).  On September 12,
2014, before the Summary Judgment Motion was officially
taken under submission, Plaintiff filed a "Request for
Disposition" regarding the "Rule 56(f) Motion," or a
continuance and/or stay in the disposition because he has
not been able to conduct the discovery he requested.  (Doc.
36).  Additionally, on September 16, 2014, Plaintiff filed
a "Legal Correspondence" which the Court treats as a
Response to the Court's Order dated August 20, 2014.  That

consideration of these pleadings and motions, the evidence submitted by the parties, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be granted and Plaintiff's claims against Defendants be dismissed with prejudice.

## I.  Facts and Proceedings

On April 3, 2014, Plaintiff filed his original Complaint, alleging a constitutional breach in the standards of his medical care regarding his VP shunt due to his long-standing condition of hydrocephalus.  (Doc. 1).  Though Plaintiff has been deemed a three-striker under the Prison Litigation Reform Act, the Court discerned through a liberal reading of his Complaint that Plaintiff met the imminent danger of serious physical injury exception to §

Order instructed Plaintiff to inform the Court of his desire to proceed and to notate any outstanding motions not later
than September 17, 2014.  (Doc. 25).  Plaintiff's "legal correspondence" indicates he wishes to proceed, and that there is outstanding discovery he requested from Defendant Emmons. (Doc. 37). Reviewing the record, the Court notes that because Plaintiff's requests for discovery were denied on September 12, 2014, (see Endorsed Orders, docket entries 34, 35), his "legal correspondence" does not address any outstanding issues necessary to adjudicate his case. Likewise, his request for a stay to pursue discovery is **MOOT** as the Court has already ruled on his discovery requests.  Therefore, the only outstanding request in Plaintiff's "Request for Disposition," (Doc. 36), which the Court will happily oblige given its interest of judicial economy and expediency.  The following Report and Recommendation is thus issued prior to the date it was to be taken under submission, at Plaintiff's request.

1915(g), and thereby was allowed to proceed *in forma pauperis* on his present medical care claims.[2] (Doc. 3). Because the Court acknowledges that hydrocephalus can be a serious medical condition, and because Plaintiff contends in his Complaint that Defendants interfered with his attempts to schedule sick calls for his malfunctioning shunt, the Court served the named Defendants; however, due to Plaintiff's admission that Defendant Hetzel acted without a culpable state of mind, he was dismissed from this action. (Docs. 3, 1 at 11).

On July 7, 2014, Plaintiff filed a Motion For Leave to File an Amended Complaint (Doc. 8), which was denied for failure to attach the proposed amended complaint to the Motion. (Doc. 13). Defendants' Special Reports each address the original Complaint,[3] and, given the Court's denial of said Motion to Amend, the original Complaint will stand as the document on which the Court resolves Plaintiff's claims.

---

[2] Also noted in this finding is the inordinate amount of treatment Plaintiff has received for his condition in the past, and his general refusal to accept such treatment because the treating doctor was not Plaintiff's doctor of choice. (Doc. 3 at 3-4).

[3] Defendant Wall filed an answer to Plaintiff's Amended Complaint; however, the Court treats said Answer as an inadvertent filing since Defendant Walls already filed an Answer to Plaintiff's original Complaint. (Docs. 20, 11).

Turning to the Complaint, the Court finds the facts to be as follows.  Taking judicial notice of its records, the Court relies on *May v. Patterson*, 11-675-KD-B, which sheds relevant background on Plaintiff's condition and amenability (or lack thereof) to adequately provided medical care.  In *Patterson,* Defendants' motion for summary judgment was ultimately granted and Plaintiff's case dismissed with prejudice.

As demonstrated in *May v. Patterson,* Plaintiff has a longstanding condition, hydrocephalus, for which he has received ample care- ample care which he fails to disclose in his present Complaint.  In 1990, to accommodate his hydrocephalus, a ventriculoperitoneal ("VP") shunt was implanted to relieve the excessive buildup of cerebrospinal fluid, which occurs in excess as a result of hydrocephalus. (Doc. 69 at 1-2).  Plaintiff has been incarcerated at Holman Correctional Facility ("Holman") since March 14, 2008.  Since then, and leading up to the resolution of *Patterson*, Plaintiff received multiple treatments and extensive care for his VP shunt, including but not limited to CT scans of his head, multiple consultations with prison and non-prison radiologists and neurologists, and x-rays, all of which ultimately culminated into a recommendation for shunt-corrective surgery by Dr. Quindlen, a board

certified neurosurgeon located in Mobile, Alabama. (Doc. 69 at 2-6). After receiving the recommendation for surgery, Plaintiff repeatedly refused to allow Dr. Quindlen to perform the surgery because Dr. Quindlen was not his surgeon of choice and he questioned whether Dr. Quindlen was following medical protocol. (Doc. 69 at 7).

To the Court's knowledge, the shunt revision has not been performed since it was recommended by Dr. Quindlen and refused by Plaintiff in 2010. Based on the amount of coherent filings with which Plaintiff has peppered the Court since the resolution of *Patterson*, it appears Plaintiff is coping with his condition just fine. Notwithstanding, the Court does acknowledge that hydrocephalus is a serious medical condition and a malfunctioning shunt can deteriorate to the extent that denial of meaningful medical care could rise to the level of deliberate indifference, which is what Plaintiff alleges occurred in this action.

Regarding Defendant Emmons, Plaintiff alleges that she disregarded the institution's criteria and recommended that Plaintiff remain at a shelter that caused the degeneration of his health issues. (*Id.* at 11). Plaintiff alleges that Holman lacks the policies and procedures related to the treatment of his shunt and that "Defendants do not have the

ability to learn or retain adequate information concerning [his] VP shunt malfunction," thereby creating a violation of the Eighth Amendment's cruel and unusual punishment clause. (*Id.* at 9). Plaintiff proposes that "inmates with medium custody in general population or segregation are to be assigned to Easterling, Ventress, Bullock or Kilby." (*Id.* at 11). He also states that remaining at Holman threatens his physical and general wellbeing. (*Id.*).

As for Defendant Smith, Plaintiff contends that when he asked for medical care due to the alleged worsening state of his shunt, that Defendant Smith interfered with the sick call procedures by ripping off the back of the form and giving it back to Plaintiff. (Doc. 1 at 8). Plaintiff alleges that Smith's conduct caused his health and welfare to be neglected, and thus rises to the level of an Eighth Amendment violation. (*Id.* at 6). This is the only allegation against Defendant Smith.

Regarding Defendant Walls, Plaintiff contends that once he was finally taken to the health care unit by another shift, Defendant Walls deceived him by indicating that this was not a sick call issue. (*Id.* at 8). This is likewise the only allegation against Defendant Walls, which Plaintiff maintains rises to the level of an Eighth Amendment violation. Plaintiff alleges he signed up for

sick call again the next day and the institution neglected to ensure that he was taken to sick call. (*Id.* at 11).

In response to Plaintiff's Complaint, Defendants Smith and Emmons filed their Answer and Special Report generally denying all of Plaintiff's allegations. (Docs. 23, 24). Specifically, Defendant Emmons states that as a Classification Specialist, she has little information regarding the medical conditions of inmates, as HIPAA laws generally prevent her from obtaining inmate medical records other than health codes necessary to classify inmates. (Doc. 24-2 at 2). Other than information that Plaintiff provided himself in his pre-sentence investigation in 2002,[4] Defendant Emmons has never been aware of any of his medical conditions. (*Id.*). Over the intervening twelve years, however, it appears that Plaintiff's health has improved given that his health code classification as of February 18, 2014, was a level "1," which is defined as "generally healthy, stable, manages self-care and is compliant with medications." (*Id.*). Plaintiff's mental health code at that time was a level "0," which is defined as "no identified need for mental health assistance, receives

_____

[4] In 2002, Plaintiff stated that he is in poor health, has undergone three brain surgeries, suffers from seizures, and has received treatment for mental or emotional problems at Indian Rivers and admits to using marijuana with the last time being in February of 2000. (Doc. 24-2 at 2).

crisis intervention services when indicated and can
participate in ADOC programs as available." (*Id.* at 2-3).

Based on Plaintiff's health codes, Defendant Emmons
was not alerted to a medical or mental health issue that
needed addressing in his February 2014 review.
Additionally, if a medical transfer becomes necessary, a
member of the medical staff initiates the transfer for
those medical reasons. (*Id.* at 3). A medical transfer is
not initiated by a Classification Specialist, such as
Defendant Emmons. (*Id.*).

Furthermore, addressing Plaintiff's request to be
housed at another facility, Defendant Emmons attests that
Plaintiff is classified at a security level of "5," which
means that he must be housed at a prison that accommodates
level "5" inmates. (*Id.*). Defendant Emmons would not have
recommended a transfer to any of Plaintiff's requested
facilities because none of them accommodate inmates at his
security level. Easterling, Ventress and Bullock are all
level "4" facilities; whereas Kilby is a "Receiving and
Classification Center," which means that it "serves as
receiving and initial classification facility for male
inmates entering ADOC as well as parole violators being
returned to custody." (*Id.*). Defendant Emmons denies
violating Plaintiff's Eighth Amendment rights. (*Id.*).

Defendant Smith likewise denies Plaintiff's allegations and attests that he did not interfere with Plaintiff being taken to sick call. (Doc. 24-1 at 1-2). Smith works the night shift, which does not conduct sick call. When Plaintiff presented with a sick call slip, Defendant Smith followed standard procedure by giving Plaintiff the carbon copy of his sick call slip for his records, and left the nurse's copy of the slip on the sick call list. (*Id.*). Plaintiff even admits that he was escorted to sick call the next day by another shift that conducts sick call. (Doc. 1 at 8).

Defendant Wall is a Licensed Practical Nurse at Holman, and likewise denies Plaintiff's allegations of cruel and unusual punishment. (Docs. 18, 18-1, 18-2). As noted above, the allegation against Defendant Wall is that she deceived Plaintiff by indicating that this was not a sick call issue, and that, on the next day, Plaintiff signed up for sick call again, but the institution neglected to ensure he was taken to sick call. (Doc. 1 at 8). Defendant Wall reviewed Plaintiff's medical records since September 9, 2013, which are attached to her Special Report. (Docs. 18-1, 18-2). Defendant Wall states that, though she does not have any specific recollection of the facts at issue, the Director of Nursing at Holman, Bennie

Andrews, does and he has submitted an affidavit and the relevant medical records necessary for the Court to determine if Plaintiff was provided with adequate medical care. Those medical records indicate that the only time Defendant Wall is referenced is on a Release of Responsibility, which Plaintiff signed on February 28, 2014 because he already had an appointment with a medical doctor on March 5, 2014 and refused to be seen by the care providers in sick call. (Doc. 18-1 at 4).

Defendant Wall attests that as an LPN, she has no determination over which inmate will or will not be seen by a medical care provider, and has never refused Plaintiff for his requested treatment, nor has she provided nursing care which is not in compliance with the standard of care of nurses practicing in the state of Alabama. Furthermore, the medical records attached to Mr. Andrews' affidavit conclusively indicate that Plaintiff was adequately and compassionately treated on multiple occasions for every grievance filed since September 9, 2013.

In addition to Defendant Wall's care, other treating nurses even tried to save Plaintiff from paying a copay at sick call if he was able to wait to see the doctor at the appointment he already had scheduled. (Doc. 18-2 at 6). Despite this act of generosity, Plaintiff complained and

acted as if he had been utterly refused and completely shut out of meaningful medical care. (Doc. 18-2 at 6). In response to Plaintiff's misinterpretation of the situation, Mr. Andrews informed Plaintiff that the nurse was simply acting out of pure generosity, but that the medical staff would be happy to treat him on any occasion regardless of other doctors' appointments. *(Id).*

Plaintiff filed his Response in Opposition to Defendant Wall's Special Report,[5] stating that she committed deliberate indifference against Plaintiff because she had "knowledge of a serious medical need and fail [sic] to respond at all. Knowledge of a serious medical need and intentional refusal amounts to deliberate indifference." (Doc. 26 at 6). Plaintiff further states that "Defendant Wall's actions reached the standards of deliberate indifference [when Plaintiff] signed up for sick call and Defendant Wall[] played the role of gatekeeper. She made a decision on whats [sic] a sick call issue and what is not and refused to triaged [sic Plaintiff] so an appointment

---

[5] Plaintiff also filed a Motion to Compel Discovery (Doc. 32), which is **DENIED** as Plaintiff has not sought the proper leave from this Court to engage in discovery. Furthermore, in light of the submissions by Defendants, the Court does not find that any additional discovery or documents is necessary to determine the outcome of Plaintiff's Complaint.

can be set up him [sic] to be evaluated by the medical providers." (*Id.* at 3).

For relief, Plaintiff requests "$50,000.00 in punitive damages, $50,000.00 compensatory damages, all attoney [sic] fees and court cost [sic] be taxes [sic] to state." (Doc. 1 at 7).

## II.  Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  It is well-established that summary judgment is proper under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

> If a party fails to properly support an
> assertion of fact or fails to properly
> address another party's assertion of
> fact as required by Rule 56(c), the
> court may:
>
>> (1) give an opportunity to
>> properly support or address the
>> fact;
>> (2) consider the fact undisputed
>> for purposes of the motion;
>> (3) grant summary judgment if the
>> motion and supporting materials--
>> including the facts considered
>> undisputed--show that the movant
>> is entitled to it; or
>> (4) issue any other appropriate
>> order.

Fed. R. Civ. P. 56(e). "[T]here is no issue for trial
unless there is sufficient evidence favoring the nonmoving
party for a jury to return a verdict for that party. . . .
If the evidence is merely colorable, . . . or is not
significantly probative, . . . summary judgment may be
granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
249-50 (1986) (citations omitted). "Summary judgment is
mandated where a party 'fails to make a showing sufficient
to establish the existence of an element essential to that
party's case, and on which that party will bear the burden
of proof at trial.'" *Custom Mfg. & Eng'g, Inc. v. Midway
Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (citations
omitted).

## III. DISCUSSION

A. Eighth Amendment Violations

As discussed above, Plaintiff alleges in his § 1983 Complaint that Defendants violated his rights under the Eighth Amendment by providing inadequate medical care pertaining to his hydrocephalus and his alleged malfunctioning VP shunt.  Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

In addressing Plaintiff's § 1983 claims, the Court identifies "the specific constitutional right allegedly infringed. . . ." *Graham v. Connor,* 490 U.S. 386, 394 (1989).  Plaintiff's Complaint alleges inadequate medical care and thus implicates Eighth Amendment violations against Defendants Emmons, Smith and Wall.  The Eighth Amendment provides that, "[ex]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

To prevail on a claim for inadequate medical care, an inmate must show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97 (1976). In *Estelle,* the Supreme Court held that a prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle* at 104; *see also Campbell v. Sikes,* 169 F.3d 1353, 1363 (11th Cir. 1999)(stating "[t]he Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs"). "However, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *McElligot v. Foley,* 182 F.3d 1248, 1254 (11th Cir. 1999)(citation omitted). The inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain. . . . Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. 97, 105-06. Thus, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Id.* at 106.

The Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim, which must be met in order to prove an Eighth Amendment violation: the objective component inquires if the alleged wrongdoing is harmful enough to establish a constitutional violation; and the subjective component inquires whether the official(s) acted with a sufficiently culpable state of mind. *Sims v. Mashburn,* 25 F.3d 980, 983 (11th Cir. 1994)(*citing Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).

The objective component requires a plaintiff to demonstrate that an "objectively serious medical need" exists. *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (*citing Hill v. DeKalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994) overruled on other grounds in *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)(quotation marks omitted)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (citations and quotation marks omitted).

In order to meet the subjective requirement of an
Eighth Amendment denial of medical care claim, Plaintiff
must demonstrate "deliberate indifference" to a serious
medical need. *Farrow,* 320 F.3d at 1243. "Deliberate
indifference entails more than mere negligence. *Estelle,*
429 U.S. at 106; *Farmer v. Brennan,* 511 U.S. 825, 835
(1994). The Supreme Court held that a prison official
cannot be found deliberately indifferent under the Eighth
Amendment "unless the official *knows of* and *disregards an
excessive risk to inmate health or safety;* the official
must both be aware of facts from which the inference could
be drawn that a substantial risk of serious harm exists,
and he must also draw the inference." *Farmer,* 511 U.S.,
825, 837-38 (emphasis added). However, "an official's
failure to alleviate a significant risk that he should have
perceived but did not, while no cause for commendation,
cannot under our cases be condemned as the infliction of
punishment." *Id.* at 838. Therefore, "under Estelle and
*Farmer,* deliberate indifference has three components: (1)
subjective knowledge of a risk of serious harm; (2)
disregard of that risk; (3) by conduct that is more than
mere negligence." *Farrow,* 320 F.3d 1235.

Also, it is well established that a difference in
opinion or a disagreement between an inmate and prison

officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs. *See Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989); *accord Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)(disavowing any attempts to second-guess the propriety or adequacy of a particular course of treatment, as this, along with all other aspects of health care, remains a question of sound professional judgment).

Likewise, the medical malpractice or negligence by a physician allegation is insufficient to form the basis of a claim for deliberate indifference. *See Estelle,* 429 U.S. at 105-07; *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer,* 511 U.S. 825, 833-38; *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996)(stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Hill,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994)(recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence).

Reviewing the record in the light most favorable to Plaintiff, and applying a liberal construction of his Complaint, the Court finds that Plaintiff fails to meet his burden on the subjective requirement of deliberate indifference relating to each Defendant.  Because Plaintiff would carries the burden of proof on each essential element of deliberate indifference at trial, and because he fails to provide any evidence in which a trier of fact might find in hia favor, the Court finds that summary judgment in favor of Defendants is warranted and Plaintiff's Complaint be dismissed with prejudice for the following reasons.

1.  Defendant Emmons

Plaintiff claims that Defendant Emmons should have transferred him to a facility capable of dealing with his "handicap," and which has the "ability to learn or retain adequate information concerning [his] VP shunt malfunction."  (Doc. 1 at 11, 9).  First and foremost, Plaintiff does not identify how Holman is ill-quipped to deal with his medical condition.  In the present case Plaintiff merely disagrees with the treatment he received, or he completely refused treatment, then complains about being denied medical treatment.  *See supra,* p. 2. Plaintiff provides no proof that his he was denied treatment, therefore, the allegations that he was denied

medical care or received inadequate medical care at Holman
are conclusory, and it is well settled that a conclusion
cannot be taken as true. *Ashcroft v. Iqbal,* 556 U.S. 662,
678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212
F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has
consistently held that conclusory allegations without
specific supporting facts have no probative value");
*Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir.
1984)(a Plaintiff's mere verification of conclusory
allegations is not sufficient to oppose a motion for
summary judgment).

Furthermore, Plaintiff fails to demonstrate that
Defendant Emmons actually knew of Plaintiff's condition and
disregarded an excessive risk to his health or safety.
*Farmer,* 511 U.S. 825, 837-38. Under HIPAA, Defendant
Emmons only had access to health codes regarding
Plaintiff's physical and mental states, both of which were
a "1," indicating general health and stability, and "0"
indicating no need for mental health assistance,
respectively. (Doc. 24-2 at 2-3). Therefore, Defendant
Emmons could not have had knowledge that Plaintiff's
condition posed an excessive risk to his health or safety
and thus could not have recklessly disregarded that risk.
It also bears noting that medical transfers are initiated

by medical staff, not Classification Specialists like Defendant Emmons. (*Id.* at 3).

## 2. Defendant Smith

Plaintiff contends Defendant Smith was deliberately indifferent to his serious medical needs when Smith ripped off the carbon copy of Plaintiff's sick call request and gave it back to him. There is likewise no evidence presented by Plaintiff sufficient to meet his burden on the subjective requirement of deliberate indifference. Defendant Smith attests that he left the nurse's copy of Plaintiff's sick call request with the sick call list. (Doc. 24-2 at 10-2). Defendant Smith further attests that he works the night shift, and the night shift does not conduct sick call. (*Id.* at 1). Plaintiff even admits that he was taken to sick call the very next day by another shift. (Doc. 1 at 8). Therefore, there is no evidence that Defendant Smith did anything to interfere in any way with Plaintiff's sick call procedures or that he was more than negligent in knowing of and disregarding an excessive risk to Plaintiff's health and safety. *Farmer,* 811 U.S. at 837–38.

## 3. Defendant Wall

Plaintiff contends that Defendant Wall acted as a "gatekeeper" in determining what is a sick call issue and

what is not, and decided that his issue was not one for sick call thereby refusing to triage Plaintiff so an appointment could be made for him to be evaluated by a medical provider. (Docs. 1, 26 at 8, 3). Plaintiff contends that Wall's alleged intentional refusal to triage him and her leaving his condition unchecked amounts to deliberate indifference to his serious medical needs. (Doc. 26 at 3-4, 6). Defendant Wall responded to Plaintiff's allegations attesting that she lacks specific recollection as to Plaintiff's assertions but nonetheless reviewed Plaintiff's medical file and concluded that it appears Plaintiff refused to sign up for sick call because he already had an appointment with a medical doctor. (Doc. 18-1 at 4).

Defendant Wall further attests that as a Licensed Practical Nurse, she has no determination over which inmate will or will not be seen by a health care provider, and even so, Plaintiff signed a Release of Responsibility stating that he refused to be seen at sick call due to an upcoming appointment with a medical doctor. (*Id.* at 4, 6). Lastly, Defendant Wall swears that she has never refused to provide nursing care to Plaintiff, and has always provided adequate care within the standard of care of nurses practicing in the state of Alabama. (*Id.* at 4).

Plaintiff offers no facts or evidence which tend to refute Wall's Response leading the Court to conclude again that his allegations against Defendant Wall are merely conclusory. Furthermore, and for these reasons, it is amply clear that Plaintiff fails to meet his burden on the subjective element of deliberate indifference. Plaintiff fails to establish any evidence sufficient to indicate Defendant Wall actually knew of and intentionally disregarded a serious risk to Plaintiff's health and safety. The medical records indicate that Plaintiff was treated with regular medical care for his condition and was never denied treatment by Defendant Wall when he requested it.

Regarding the adequacy of his care, Plaintiff admits he was ultimately to taken to sick call the next day by a shift that conducts sick call. (Doc. 1 at 8). Furthermore, the medical records provided to the Court indicate that every grievance and every inmate request slip submitted by Plaintiff was thoroughly responded to with explanations of his prior CT scans indicating slight improvement in his condition, as well as a prescription for pain medicine to alleviate his back pain. (Doc. 18-2). As set out above, where a prisoner received some medical treatment and the dispute is over the adequacy of the

treatment or course of treatment, federal courts are
generally reluctant to second-guess medical judgments and
to constitutionalize claims which sound in state tort law.
*Wright v. Harrison,* 2011 WL 4744358, *2 (M.D.Ga.
2011)(*citing Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (1st
Cir. 1981).  Plaintiff has again failed to present any
verifiable medical evidence that Defendants should have
provided him with a different course of treatment.  Rather,
he makes insufficient and unsupported statements that his
care was inadequate- none of which rise to the level an
Eighth Amendment violation.

Accordingly, Plaintiff's general averments
unaccompanied by any supportive facts, which tend to prove
the unconstitutionality of Plaintiff's treatment, are
insufficient to raise a claim under the purview of the
Eighth Amendment.  Thus, Plaintiff's Eighth Amendment
medical care claims for deliberate indifference against
Defendants Emmons, Smith and Wall fail as a matter of law.

### III.  Conclusion

For all of the reasons set out above, this Court
concludes that Defendants Emmons, Smith and Wall are
entitled to Summary Judgment in their favor on all claims
asserted against them by Plaintiff.  Accordingly, it is
recommended that Defendants' Motion for Summary Judgment be

granted, that this action against these Defendants be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D.ALA. L.R.72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 17th day of September, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE